IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EAZS A. HARPER, B83567,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-1157-DWD |
| C/O HART, | ) |
| C/O BENT, | ) |
| NURSE MORGAN, | ) |
| ANTHONY WILLS, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Eazs A. Harper, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 6). In the Complaint and related Motion for a Preliminary Injunction (Doc. 2), Plaintiff alleges that on April 3, 2024, he was severely beaten by staff at Menard, and he claims he has yet to receive needed medical care.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On April 3, 2024, Plaintiff was transferred from Lawrence Correctional Center to Menard.  Upon arrival, he was taken to a caged area where Defendants C/O Bent and C/O Hart began to ask him about a previous lawsuit.  (Doc. 6 at 17).  Plaintiff was directed to strip, and he intended to answer the queries from Hart and Bent when he was told to face the two officers.  Plaintiff was handcuffed to a gate while naked, and Hart and Bent sprayed him with two cans of mace or chemical spray.  They sprayed his face, head, upper and lower body, and his anus.  They also kicked and punched his whole body.  Plaintiff alleges other officers participated, but he could not see them because of the mace.

Plaintiff was forced out of the cell still naked, where he was placed in a jumpsuit. While clothing him, someone grabbed his hair and forcibly ripped out some of his braids. (Doc. 6 at 18).  Plaintiff was maced again.  Plaintiff alleges that as Bent and Hart escorted him away from the area of the assault, they had to hold him up by his arms because he could not stand from the pain, and he was having difficulty breathing due to asthma and bronchitis.  (Doc. 6 at 18).

Bent, Hart, and Defendant Nurse Morgan all denied Plaintiff medical treatment despite his pleas for assistance.  (Doc. 6 at 18).  The assault continued as Bent and Hart kicked him in the back down a set of stairs, punched him in the face, and broke a finger on his left hand.

Upon arrival at a cell in the North 2 gallery, Bent and Hart removed the bedding and turned off the water. They held Plaintiff's hands thru the metal chuckhole in the door and repeatedly slammed the metal slot on his hands before releasing him from handcuffs. Plaintiff alleges his wrists were cut either by the handcuffs or the door during this ordeal, and they were bleeding when the handcuffs were removed.

Left without running water, Plaintiff had no choice but to dunk his face in the toilet bowl to try to wash away the chemical agent. Upon doing so, he realized the toilet contained urine and other objects and he was so shocked he lost consciousness. (Doc. 6 at 19). Plaintiff further alleges he was unable to breathe and needed his asthma pump but Bent and Hart took his inhalers and emptied the contents, so he could not use his medication to control his breathing. (Doc. 6 at 19-20). Plaintiff claims he laid on the cell floor unconscious for hours in pain. (Doc. 6 at 20).

Plaintiff alleges that as of April 30, 2024, he still had yet to see any medical staff for his injuries. He claims he has placed requests to be seen by the medical unit to no avail. He has pain in his back, hip, and right leg, as well as numbness from his right hand to elbow, and a broken finger on his left hand. He also has a bald spot from the hair that was pulled. (Doc. 6 at 20).

Plaintiff claims that to-date, Bent is his 3/11 shift officer and Bent refuses to give him a shower or food. He also alleges Bent has been stopping his outgoing mail and medical request slips, in part because Nurse Morgan is Bent's girlfriend. He claims Bent has told him he will continue to trash his medical slips. (Doc. 6 at 21).

Plaintiff further alleges he has written a grievance, but Defendant Warden Wills has denied him a proper investigation.  He claims this is because Bent, Hart, and Wills intend to retaliate against him for another lawsuit he has that is currently pending about a former assault at Menard.  To this end, he alleges staff has gone to great lengths to keep him from his legal materials and property, and they have issued a false disciplinary report to keep him in segregation.  (Doc. 6 at 21-22).

Plaintiff incorporates his request for temporary restraining order or preliminary injunctive relief, and he also seeks monetary damages.  (Doc. 6 at 23-24).  In support of his complaint, he submitted a grievance that was denied emergency status, and a receipt indicating that the grievance was sent to second level review on April 25, 2024.  (Doc. 6 at 27-29).  He admits at the outset of the complaint that his grievance is still pending.  (Doc. 6 at 16).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Eighth Amendment excessive force claim against Defendants Bent and Hart for the events on April 3, 2024;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Bent, Hart, and Morgan for depriving Plaintiff of medical care or at least the ability to wash the chemical agent off of his body after the events of April 3, 2024;**

**Claim 3:** **Eighth Amendment cruel and unusual punishment claim against Defendant Bent for depriving Plaintiff of food, showers, and access to medical care and mail/grievances from April 3, 2024 to present;**

**Claim 4:** **First Amendment retaliation claim against Defendants Hart and Bent for their actions against Plaintiff;**

> **Claim 5:** Eighth Amendment deliberate indifference claim against Defendant Wills for failing to investigate Plaintiff's allegations;
>
> **Claim 6:** State law assault and battery claim against Hart and Bent for the April 3, 2024, events.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff expressed a desire to proceed on a failure to protect or failure to intervene theory, but he does not offer any facts that any named defendant had an ability to foresee and prevent the harm that allegedly occurred, so he cannot proceed on these theories. He also mentioned false discipline, which can sometimes provide the basis for a claim, but he did not associate this allegation with any specific defendant, and he did not give enough detail for the Court to otherwise make out a plausible claim for this issue.

## Analysis

The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Here, Plaintiff's

allegations about the alleged assault are sufficient to state a plausible excessive force claim, so Claim 1 may proceed against Hart and Bent.

Claim 2 against Bent, Hart, and Morgan related to medical care for his alleged injuries, is also sufficient to proceed. Plaintiff alleges he had injuries that may have been serious, including a broken finger and bleeding from multiple wounds. He also alleges he was forced to remain covered from head-to-toe in chemical agents with no ability to wash up. *See e.g. Kervin v. Barnes*, 144 Fed. App'x 551, 552 (7th Cir. 2005) ("detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering."). Accordingly, at this juncture, Plaintiff may proceed against Hart, Bent, and Morgan on Claim 2.

In Claim 3, Plaintiff alleges that Bent has been continuing to deny him basics like showers, food, and access to medical care. Though an occasional missed shower or meal generally would not be enough to state a claim, here Plaintiff describes ongoing incidents acted out for the purpose of causing him harm or distress. This is enough to proceed on Claim 3.

Claim 4 against Hart and Bent may also proceed on a theory of retaliation. Plaintiff alleges that immediately before assaulting him, Hart and Bent were inquiring about other lawsuits he may have filed, and that they also acted to retaliate for a specific earlier lawsuit that is currently pending in this District. This is enough to suggest protected speech and actions taken to deter it. As such, Claim 4 may proceed against Bent and Hart.

Finally, in Claim 5, Plaintiff faults Defendant Wills for denying him an investigation into the incidents he grieved. He supplied proof that Wills deemed his

grievance a non-emergency, but he also admitted the grievance has not yet been fully processed, and the grievance response itself indicated that the incident had been investigated. This information brings two issues to the forefront. First, it demonstrates (as Plaintiff openly admitted) that Plaintiff filed this lawsuit before he has finished the grievance process. A sue first, exhaust later approach is almost never successful, so this early filing of the case may ultimately lead to the early termination of this case. *See e.g., Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *compare with Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171 (7th Cir. 2010) (discussing the possibility that there could be a danger so imminent that exhaustion requirements might be modified, but finding that an inmate's own scenario did not fit that possibility where he filed suit before even awaiting the outcome of an emergency grievance determination). Second, if the grievance is still pending, this means that the prison's internal procedures for reviewing an inmate's allegations have not even been completed. This being the case, Plaintiff cannot yet fault Defendant Wills for failing to adequately consider the issue. Even if Wills made an error in grievance processing, there is no constitutionally protected interest in the grievance process. *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). For all these reasons, the Court finds that Claim 5 against Wills is insufficient as pled.

Claim 6, a state law claim for assault and battery against Bent and Hart may also proceed.

## Motion for a Preliminary Injunction

In the Motion for a Preliminary Injunction (Doc. 2) and again in the Complaint (Doc. 6), Plaintiff alleges that from the date of the beating (April 3, 2024) till present, he

has yet to see a medical professional for his injuries. Though he initially described the injuries as cuts, swelling, and a broken finger, he has not provided any update on his condition other than to allege he is still in pain from injuries to his "back, hip, right leg, numbness in his right hand on up to his elbow, a broken finger on his left hand, and mace in [his] hair that's cause damage of hair loss." (Doc. 6 at 20).

Plaintiff also alleged in his Motion for a Preliminary Injunction (Doc. 2) that he had been unable to shower at Menard for about two weeks. He repeats in his Complaint that he has been denied showers, food, and his property. These issues appear attributable to Defendant Bent, whom he alleges regularly works his gallery and denies him privileges. He further alleges there is tampering with his mail, false incident reports, and issues with phone calls and family visits, though he does not tie these particular issues to specific defendants.

Plaintiff seeks to be kept separate from Defendants Bent, Hart, and Morgan for fear of further issues, and because they participated in the underlying harm. (Docs. 2, 6). He also suggests that he would like a prison transfer, and appropriate medical care.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive

means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

For purposes of initial review, the Court finds that Plaintiff's claims on the face have some likelihood of success on the merits, and also that he seeks injunctive relief related to the issues presented in this lawsuit, with a few exceptions. Plaintiff's complaints about his property, mail tampering, false discipline, phone calls, and family visits are not related to underlying claims, so these issues will not receive further consideration for injunctive relief. By contrast, Plaintiff's request for medical care and to be kept separate from Hart, Morgan, and Bent are taken seriously at this juncture. Warden Wills has already been served in this case in his official capacity and has returned an executed waiver of service. He must file a response to Plaintiff's Motion for a Preliminary Injunction within 14 days of counsel appearing on his behalf. His response should address Plaintiff's current medical status, including his requests for care, and any care he has received. It should also address Plaintiff's proximity to Defendants Hart, Bent, and Morgan. The Court will defer any further action on the Motion (Doc. 2) until Wills' responds.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 6) survives initial screening as described above against Defendants C/O Hart and C/O Bent, **Claim 2** survives against Defendants Hart, Bent, and Nurse Morgan, and **Claim 3** survives against Bent, **Claim 4** survives against Hart and Bent, and **Claim 6** survives against Hart

and Bent. By contrast, all claims against Defendant Anthony Wills in his individual capacity are dismissed without prejudice for failure to state a claim. Warden Anthony Wills will remain a party to this case in his official capacity only to respond to the Motion for a Preliminary Injunction (Doc. 2) and, if necessary, to implement injunctive relief.

The Clerk of Court is **DIRECTED** to prepare for Defendants C/O Bent, C/O Hart, and Nurse Morgan: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 6), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

As explained above, a ruling on Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is **DEFERRED**. Warden Wills must **respond within 14 days** of entering an appearance in this case.

**IT IS SO ORDERED.**

Dated: May 2, 2024         /s *David W. Dugan*
                           _____
                           DAVID W. DUGAN
                           United States District Judge

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.