IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EAZS A. HARPER, B83567,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **ZACHARY HART,** | ) |
| **QUINTON BENT,** | ) |
| **MORGAN GIACOMO,** | ) |
| **ANTHONY WILLS,** | ) |
| **DAVID GARCIA,** | )   Case No. 24-cv-1157-DWD |
| **C/O KORONADO 1,** | ) |
| **C/O KORONADO 2,** | ) |
| **C/O HUSTON,** | ) |
| **C/O KITCHEN,** | ) |
| **C/O KNIGHT,** | ) |
| **C/O HAGEIN,** | ) |
| **SGT. LEPOSKY,** | ) |
| | ) |
|       **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

  Plaintiff Eazs Harper, an inmate of the Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Defendants have moved for summary judgment on Plaintiff's failure to exhaust his administrative remedies (Doc. 76), Plaintiff has responded (Doc. 81), and Defendants have replied (Doc. 89). Additionally, Plaintiff has a pending Motion to Amend (Doc. 82), and a Motion to Clarify the Motion to Amend (Doc. 87). For reasons explained in this Order, the Motion for Summary Judgment (Doc. 76) will be granted.

## BACKGROUND

On April 23, 2024, this case was opened at the direction of District Judge Stephen P. McGlynn by the severance of a Motion for a Preliminary Injunction (Doc. 2) from a different civil case of Plaintiff's pending before District Judge McGlynn—Case No. 23-cv-912. Given District Judge McGlynn's expressed concern about Plaintiff's welfare at the time this action was opened, the undersigned immediately directed service upon Menard Warden Anthony Wills to respond to the allegations pertaining to Plaintiff's safety, however the Court also simultaneously noted that Plaintiff needed to inform the Court within 14 days if he wished to proceed in this newly created action, and he needed to file an operative complaint. (Doc. 3).

On April 30, 2024, the Court received Plaintiff's Complaint (Doc. 6), which it interpreted as his indication he wished to proceed with this action. The Complaint alleged that Defendants Hart and Bent assaulted him when he arrived at Menard on April 3, 2024, in retaliation for his filing of a prior lawsuit. He further alleged that Bent, Hart, and Nurse Morgan denied him medical care for his injuries, and Bent deprived him of access to food, showers, medical care and grievances. Notably, in the original complaint, Plaintiff alleged that during the assault he was kicked and punched in the head and stomach area by "C/O Bent, C/O Z. Hart and other C/O officer's who Plaintiff could not see due to mace was in Plaintiff eyes." (Doc. 6 at 17-18). Plaintiff further alleged he was "brutally assault by the many officials," and he was forced to walk to a different location by the "c/o's on 3 to 11 shift of N-2 nake[d]." (Doc. 6 at 18). In the original complaint, Plaintiff wrote, "C/O Bent has now been as of this court order trying to stop my mail

from going out, as he has taken overtime and 4/23/24 midnight shift and told Plaintiff as long as he's working my mail and grievance/complaint will never go out[.]"  (Doc. 6 at 21).  Despite this statement, in the original complaint Plaintiff indicated he had a grievance at the second stage of review (Doc. 6 at 16), and he supplied a copy of the receipt confirming that grievance had been received for grievance officer processing (Doc. 6 at 29).

On October 23, 2024, the Court received Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 48), and after directing Plaintiff to provide further clarification about his exhaustion of administrative remedies, Plaintiff was allowed to amend.  (Docs. 50, 52, 53, 57).  In the amended complaint, Plaintiff realleged the initial claims against Bent, Hart, and Nurse Morgan, and added that eight additional officers participated in the alleged beating on April 3, 2024, and the subsequent denial of medical care.  The new Defendants were C/O Koronado 1, C/O Koronado 2, C/O Huston, C/O Hagein, C/O Kitchen, C/O Garcia, C/O Knight, and Sgt. Leposky.  (Doc. 50 at 9-10).  In the amended complaint, Plaintiff indicated in the exhaustion section that he had exhausted all his administrative remedies via grievance K4-0424-1734  (Doc. 50 at 8).  However, he also asserted in the factual allegations that from April 3, 2024 to June 10, 2024, Defendant Bent had deprived him of grievance and complaint filing, among other things.  (Doc. 50 at 11-12, ¶ 12).

Between the original and amended complaints, the Court allowed Plaintiff to proceed on five claims related to these allegations:

>   **Claim 1:**   Eighth Amendment excessive force claim against Defendants Bent, Hart, C/O Koronado 1, C/O Koronado 2, C/O Hagein, C/O Kitchen, C/O Garcia, C/O Knight, and Sgt. Leposky for the events on April 3, 2024;
>
>   **Claim 2:**   Eighth Amendment deliberate indifference claim against Defendants Bent, Hart, Giacomo, C/O Koronado 1, C/O Koronado 2, C/O Hagein, C/O Kitchen, C/O Garcia, C/O Knight, and Sgt. Leposky for the events on April 3, 2024;
>
>   **Claim 3:**   Eighth Amendment cruel and unusual punishment claim against Defendant Bent for depriving Plaintiff of food, showers, and access to medical care and mail/grievances from April 3, 2024, to present;
>
>   **Claim 4:**   First Amendment retaliation claim against Defendants Hart and Bent for their actions against Plaintiff;
>
>   **Claim 6:**   State law assault and battery claim against Hart and Bent for the April 3, 2024, events.

(Docs. 8, 57).  In waivers of service (Doc. 59) and the answer to the Amended Complaint, "Koronando 1" and "Koronando 2" self-identified as Daltyn Korando and Lance Korando.  (Doc. 68 at 1).

The parties agree that there is one fully exhausted grievance, grievance number K4-0424-1734, signed by Plaintiff as an emergency on April 4, 2024.  Plaintiff attached this grievance to his complaint (Doc. 6) and his amended complaint.  Plaintiff also contends in response to summary judgment that he tried to submit grievances on April 3, 4, 5, 6, 7, and 8, 2024, but that Defendant Bent destroyed them.  (Doc. 81).  In reply, Defendants dispute this arguing that Bent did not work on the 7th or 8th.  (Doc. 89).

**FINDINGS OF FACT**

In the original grievance, Plaintiff wrote

On the date of 4/3/24 at about 6:00-7:00pm prison staff Z-Hart Badge #10832 and C/O Bent, working the 3 to 11 shift, violated my rights to be safe from violent assault and sexual assault by inmates & staff alike; yet as to the AD:501 safeguard & [PREA] act, prison staff mention herein brought me to a gated cage north 2 cage area were 3 rooms with glass doors at and a room were the c/o officers were sitting playing card games, outside that room were a black gated cage were the two officers Z Hart and c/o Bent took me out of the room with the glass door and place me in the cell black gated cage room and did I remember him form Lawrence Correctional Center, stated, I talked all that shit in 7 house to him, I told the C/O Z Hart that I don't know him and you got the wrong guy he told me that I need to take off all my clothing as I stripped out all my clothing and was standing naket the officer Bent told me to back up to the black gate put my hands in handcuff behind my back and C/O Hart then told me to face him as I turn my face to the officer he sprayed OC gas in my face and head body upper and lower, as I bent down trying to stop from being sprayed with mace the officer said sprayed his hairy ass I was spray in my butt hole by the two officers as they laugh at my pain while I was handcuff to the gated cage one of the officer kept saying stand up or they would open the cage and kick my ass Karondo and other officers was talking about my lawsuit against Menard as I kept screaming I can't see nor breath I have asthma and bronchitis the officer said talk shit now, Another say file another lawsuit bitch boy someone hit me in the head with the bus blue shoes and through the jumpsuit at me and told me get dressed I told them I need medical treatment I can't see or move I was uncuffed from the gate forced to walk blind down the stairs I was push down the steps punched in the face and kicked in the balls and ass by the C/Os that pushed me down the steps. I was pushed in to the cell of N-2 2 21, were C/O Bent is schedule to work 5-days the C/O snatched my arms through the food slot and uncuff my hands they cut my water off and I had to stick my face in the toilet bowl to breath I was force to this very day to sleep in mace denied medical treatment, and the two C/O Z Hart and C/O Bent broke my blue inhaler and threw it at me while I was trying to splash toilet water in my face and body I couldn't breath they throw me in a cell with no running water no bedding no sheets no clothing the C/O the next morning was notified that I need medical help and mental health, I call for [PREA] and ask for IA officer, yet I was threating with been through in the butt naket room on 5-gallery if I call for [PREA], I told the Sgt. Hunt that I was just assault and sexually assaulted by you officer Z Hart and C/O Bent, and they refuse to feed me refused me

> medical treatment and showed him my swollen eye and scared injury arms and my body that's covered in mace, the C/O working N-2 2-gallery on 7:00am to 3:00pm shift took me to the mental health lady Mrs. R who took my report on the assault and sexually assault and I was denied to report to IA agent, and to have my injurys recorded by medical staff and the Sgt. that threating me told the C/O Boucher to take me to the R&D, and to clothing to get me bedding and turn my water back on so I can wash the mace off of my body and face, I can't see clear out my eyes and my left eye is swollen and my bottom lip is swollen I can't breath correctly and have my problem sleeping due to being sprayed with OC gas and scared of being killed by Menard Correctional Officers behind my lawsuit of them setting me up to be killed by inmates here at Menard prison. The prison staff has retaliated on me do to my prison lawsuit against Menard prison and I need help.

(Doc. 48-2 at 1-2). As relief, Plaintiff sought a transfer, medical care, and an investigation of "all the staff of N-2 on 4/3/24 and review camera footage." (Doc. 6 at 27-28).

Plaintiff signed the grievance April 4, 2024, though he indicates in his response to summary judgment that it was not submitted until April 8, 2024, by an individual in a neighboring cell. (Doc. 81 at p. 2 ¶ 4). On April 10, 2024, Warden Wills denied the grievance emergency status, and on April 11, 2024, a counselor (Dinkins) indicated that per intel and internal affairs the allegations were unsubstantiated. (Doc. 6 at 27). The grievance was stamped as received for processing at the grievance officer level of review on April 25, 2024. (Doc. 76-3 at 5). On June 3, 2024, the grievance officer recommended that the grievance be deemed "resolved" and indicated it had been referred to internal affairs for investigation. (Doc. 76-3 at 3). The Chief Administrative Officer conferred on the same day, and Plaintiff appealed to the Administrative Review Board (ARB) on June 10, 2024. (Doc. 76-3 at 3-4). On July 8, 2024, the ARB denied the grievance as appropriately addressed by the prison. (Doc. 76-3 at 2).

Aside from grievance K4-0424-1734, Plaintiff attests in his summary judgment brief that on April 3, 4, 5, 6, 7, and 8, 2024 he attempted to submit grievances, but they were thrown away by Defendant Bent on all five days that Bent worked his gallery. (Doc. 81 at p. 2 ¶ 3). Plaintiff tendered a copy of his cumulative counseling summary that shows he was seen on weekly tour on April 8, 2024, and April 15, 2024, by Counselor Dinkins and reported no issues at that time. (Doc. 81 at p. 27). The cumulative counseling summary also demonstrates that grievance K4-0424-1734 was deemed a non-emergency by the warden, and was forwarded for a counselor's response. (Doc. 81 at p. 27). On April 11, 2024, Counselor Dinkins indicated that intel and internal affairs had investigated and found the allegations unsubstantiated. (Doc. 81 at 27). On April 25, 2024, the counseling summary reflects that the grievance was forwarded to the grievance office for second level review. (Doc. 81 at 27). In support of his complaint, Plaintiff submitted a counseling receipt indicating that his grievance had been forwarded for second level review on April 25, 2024. (Doc. 6 at 29).

CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See*

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1] After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill. 2021).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022,

---

[1] For reasons explained later in this Order, the Court does not find that this exhaustion dispute invokes *Perttu v. Richards*, 145 S.Ct. 1793 (2025).

1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

There are no exceptions to the exhaustion requirement, however, the Supreme Court and Seventh Circuit have emphasized in recent years that the exhaustion process must be available. An "available" remedy is one that is "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Crouch v. Brown,* 27 F.4th 1315, 1320 (7th Cir. 2022) citing *Ross v. Blake*, 578 U.S. 632, 642 (2016). If availability is at issue, the Court must resolve that issue before proceeding to the merits of the exhaustion dispute. *Wallace v. Baldwin,* 55 F.4th 535, 539 (7th Cir. 2022) (the district court must first consider the threshold question of if exhaustion was available). There are three circumstances that might support a finding of unavailability: (1) a process may be unavailable if it is so opaque that it becomes incapable of use; (2) a process may be unavailable if administrators thwart an inmate from using it via machination, misrepresentation, or intimidation; or, (3) a process may be unavailable if it operates as a "dead end" with officers unable or consistently unwilling to provide any relief for aggrieved inmates. *Ross v. Blake,* 578 U.S. 632, 643-44 (2016).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate must file a grievance within 60 days of an event, 20 Ill. Admin. Code § 504.810(a), and generally, a grievance officer shall make a report to the Chief Administrative Officer within two months of receipt of the written grievance, when reasonably feasible, 20 Ill. Admin. Code § 504.830(e). If the inmate is not satisfied with

the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The grievance process also provides for expedited handling of emergency grievances, and it states that if a grievance is denied emergency status, then it shall be returned to the offender for submission through the ordinary process. 20 ILL. ADMIN. CODE § 504.840(c).

B. Analysis

As an initial matter, in their reply brief, Defendants contend that Plaintiff's Response contains improper additional material facts that are irrelevant and are not properly supported by the record. They also contend that because Plaintiff did not respond to their own material facts in the format dictated by the Court's Local Rules, their facts should be treated as established. (Doc. 89). While the Defendants are correct on both accounts, Plaintiff is a pro se litigant and the Court affords broad deference to pro se litigants, particularly when it comes to technical formatting requirements for summary judgment pleadings. The Court reviewed and considered Plaintiff's additional material facts and examined the evidence he cited to determine if the facts were supported and if they were relevant to the issues in dispute at summary judgment.

The Court will begin with the impact of grievance K4-0424-1734, Plaintiff's grievance that he fully exhausted before the ARB on July 8, 2024. The grievance explicitly complains of conduct by Defendants Bent and Hart that aligns with Claim 1 (excessive force), Claim 2 (denial of medical care for associated injuries), Claim 4 (First Amendment

retaliation for using excessive force in response to a previous lawsuit), and Claim 6 (state law assault and battery). The grievance also clearly alleges that Bent refused medical care and food, which aligns with portions of Claim 3 against Bent. However, the claims against Bent and Hart were presented in the original complaint that was filed on April 30, 2024, and the grievance was not exhausted until July 8, 2024, so this lawsuit constitutes a sue first, exhaust later approach and is not permissible. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (a premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting his remedies, a premature suit cannot be cured by an amended complaint).

The grievance does *not* contain any allegations that connect to Nurse Morgan, who allegedly participated in denying medical care as stated in Claim 2. The grievance also does not complain of Defendant Bent denying showers or mail/grievances from April 3, 2024, as alleged in Claim 3. Therefore, grievance K4-0424-1734 is not sufficient to exhaust Claim 2 against Nurse Morgan, or the showers and grievance/mail aspect of Claim 3 against Defendant Bent.

Defendants argue that grievance K4-0424-1734 also does not contain sufficient details about the involvement of the defendants added by the Amended Complaint (Doc. 50)-- Garcia, Hagene, Hutson, Kitchen, Knight, Daltyn Korando, Lance Korando, and Leposky. Plaintiff counters that controlling precedent does not require an inmate to name all defendants in the grievance in order to exhaust his administrative remedies. (Doc. 81 at 13-14). Before analyzing the substance of this grievance in relation to the defendants added by the amended complaint, it is worth noting that because the defendants were

added by amended complaint, the exhaustion process had to be completed for the claims against them by the date of the amended complaint (October 23, 2024). *See Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005) (finding that an inmate who initially filed an FTCA claim against the CDC, but later amended to add Section 1983 claims against individual defendants, had to complete exhaustion of the 1983 claims before amending his complaint, but not before he had filed the entire action with the FTCA claims); *Cannon v. Washington*, 418 F.3d 714, 719-20 (7th Cir. 2005) (finding that additional 1983 claims added by an amended complaint were properly exhausted where the inmate exhausted them after filing the lawsuit, but before adding new claims and parties by an amended complaint). Plaintiff exhausted grievance K4-0424-1734 on July 8, 2024, so exhaustion was complete by the filing of the amended complaint on October 23, 2024.

Turning to the substance of grievance K4-0424-1734 in relation to the allegations against the newly added defendants, the Court finds that the grievance is not sufficient to exhaust the allegations. Neither the PLRA nor IDOC's grievance rules require an inmate to name each individual involved in an incident within the body of the grievance. *See Jones v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement."). The Seventh Circuit has recently reiterated that a grievance must contain enough information about a problem so that the prison can properly investigate and resolve the grievance. *See Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). The primary requirement is that a grievance contain enough information to put the prison on clear notice that unnamed defendants were involved. *Id.* In *Jackson*, the inmate fully exhausted several grievances that complained a single officer refused to turn

on the water in his crisis cell and singled him out for mistreatment via the water issue. In litigation, the inmate pursued claims against the single officer but also added that six additional prison employees knew of and refused to fix his lack of access to water. The *Jackson* Court concluded that the inmate's fully exhausted grievances about the single officer were not sufficient to exhaust the claims he later added against the six individual employees because "the allegation[s] in his grievance[s] [are] substantively distinct from the allegation[s] in his federal complaint." *Jackson*, 105 F.4th at 960, *citing Bowers v. Dart,* 1 F.4th 513, 517 (7th Cir. 2021).

While Plaintiff is correct that courts do not strictly enforce a name all defendants requirement, a comparison of the allegations in his grievance relative to those in the amended complaint leads to the conclusion that the grievance was not sufficient to exhaust conduct by Defendants Garcia, Hagene, Hutson, Kitchen, Knight, Daltyn Korando, Lance Korando, and Leposky. The situation in this case is on all fours with the situation in the *Jackson* case where the inmate grieved conduct of one defendant who turned off his water, and in the lawsuit tried to hold six additional defendants liable. Here, Plaintiff's grievance clearly focused on the physical abuse from Hart and Bent, with a passing mention that "Karondo" and other officers were talking nearby. In the demand for relief section of the grievance, Plaintiff did ask that all N2 staff on the day of the incident be investigated, but he did not make any clear attempt to fault specific unknown individuals in the body of the grievance for harming him during the encounter. (Doc. 6 at 27-28). In fact, in the grievance he says that the day after the assault he "told Sgt. Hunt

that [he] was just assault & sexually assaulted by your officer Z Hart & C/O Bent, and they refuse to feed me and refused medical treatment[.]"  (Doc. 6 at 28).

The assertions in grievance K4-0424-1734 are simply incongruent with the much broader allegations in the amended complaint (Doc. 50) where Plaintiff claimed that in addition to Bent and Hart, Defendants Garcia, Hagene, Hutson, Kitchen, Knight, Daltyn Korando, Lance Korando, and Leposky all participated in pulling him off of the ground and physically battered him in a mass assault event on April 3, 2024, or that they all collectively denied him medical care.  (Doc. 50 at pp. 9-10).  While a grievance does not need to contain the names of unidentified individuals, it does at least need to provide enough information for a prison to investigate and address a harmful situation.  A grievance that complains of an explicit assault by two named employees is simply not the same as a grievance alleging an inmate was assaulted by a group of ten officers, only some of whom he was able to see and identify at the time of the incident.  Grievance K4-0424-1734 clearly complained of an assault by Bent and Hart with the possibility that there were an unquantified number of bystanders either within the line of sight or within earshot.  By contrast, the amended complaint (Doc. 50) complains of a mass assault and denial of medical care by ten officers who actively participated.  The differences are too great.  Grievance K4-0424-1734 does not exhaust the claims in this lawsuit against Defendants Garcia, Hagene, Hutson, Kitchen, Knight, Daltyn Korando, Lance Korando, and Leposky.

If grievance K4-0424-1734 were the only grievance to review, this lawsuit would be dismissed in full for exhaustion reasons.  The grievance was not fully exhausted as to

Claims 1, 2, 3, 4, and 6 against Bent and Hart by the filing of the complaint on April 30, 2024, and it did not contain sufficient allegations about Nurse Morgan or portions of Claim 3 against Bent (denial of showers and mail/grievances). The grievance also does not contain sufficient allegations to exhaust Claims 1 and 2 against any of the other defendants (Garcia, Hagene, Huston, Kitchen, Knight, Daltyn Korando, Lance Korando, or Leposky) who were added by the amended complaint. However, in addition to grievance K4-0424-1734, Plaintiff argues in his summary judgment response that he attempted to submit additional grievances on April 3, 4, 5, 6, 7, and 8, but Defendant Bent trashed them. The Defendants argue in their reply brief that this assertion is not plausible because Bent was not working on the 7th or 8th. (Docs. 89, 89-1).

A closer examination of this issue is needed. Plaintiff's assertions about alleged grievance interference have changed over time. Reading the original complaint closely, Plaintiff alleged that on April 23, 2024, Bent told him that his grievances would never go out. (Doc. 6 at 21). At the same time, in the original complaint Plaintiff also clearly and unequivocally indicated that he had a grievance pending at the second level of review, and in the section of the complaint form asking about grievances he did not mention any prior grievances that had been refused or destroyed. (Doc. 6 at 16). In the factual allegations of the amended complaint, he adjusted his statement about grievances to allege that from April 3, 2024, through June 10, 2024, he was denied the ability to file grievances by Bent and others. (Doc. 50 at 11-12). He further stated that he filed an emergency grievance on April 3, 2024, that was trashed and not turned in, and he then had a second grievance turned in by a neighbor that was denied emergency status by

Warden Wills. (Doc. 50 at 12). However, in the section of the amended complaint on exhaustion he indicated he fully exhausted the grievance process via grievance K4-0424-1734. (Doc. 50 at 8). He made no mention of trashed grievances. (*Id.*).

In response to summary judgment, Plaintiff claims that Defendant Bent actively hindered his ability to submit a grievance between April 3 and 8, 2024, on the days he was working in the cellhouse. (Doc. 81 at 2). Plaintiff claims he inquired about the missing grievances with counselors Teas and Dinkins (Doc. 81 at 6, ¶ 16), and he claims that his counseling log supports the assertion that no grievances were reported from April 3 to 11, 2024 (Doc. 81 at 9, ¶ 24). Plaintiff attached the counseling summary to his response, but the summary does not align with his written version of events. He claims that he asked Teas and Dinkins about the status of his grievances, but the counseling log indicates that on April 8 and 15, 2024, Counselor Dinkins saw Plaintiff on tour and he did not report any issues. (Doc. 81 at 27). Plaintiff also claims he was not apprised of the status of grievance K4-0424-1734 while it was being processed, but again, the counseling summary shows otherwise: it notes receipt of the grievance on April 11, 2024; denial of emergency status; indicates Dinkins responded as counselor on April 11; and the grievance was received for second level review on April 25, 2024. (Doc. 81 at 27). Additionally, with the original complaint, Plaintiff attached the receipt that correlates to the counseling log, showing that on April 25, 2024, he was notified that his grievance had been forwarded to the grievance office for second level review. (Doc. 6 at 29).

The documentary evidence in the record simply does not provide any support for Plaintiff's position that he tried and failed to submit grievances prior to successfully

submitting grievance K4-0424-1734.  Plaintiff's assertions in his complaints and in his summary judgment brief are sworn statements because he signed the pleading, and at summary judgment the Court can take properly supported sworn statements as enough to establish a genuine dispute of material fact.[2]  However, it will not do so here because Plaintiff's latest statements appear to violate the prohibition on sham affidavits.[3]  This is so because in the sworn complaint Plaintiff indicated Bent did not hinder his grievances or threaten to hinder them until April 23, 2024, and now at summary judgment he is claiming without evidentiary support that Bent specifically rejected the grievances on April 3-8, 2024.  Plaintiff offers no explanation for the sudden change in his narrative.[4]  Furthermore, at no point in this litigation has Plaintiff provided a description of the contents of the alleged missing grievances.  He has not said how many he tried to submit that got lost, nor has he explained how he tried to submit them or how he corresponded

---

[2] *See McDaniel v. Syed*, 115 F.4th 805, 813-14 (7th Cir. 2024) (an inmate's statements made in a brief that is signed under the penalty of perjury can be considered evidence at the summary judgment phase); *see also Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) ("Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.").

[3]  Under the sham affidavit rule, a party cannot overcome a motion for summary judgment by "submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Adusumilli v. Chicago*, 164 F.3d 353, 360 (7th Cir. 1998); *see also James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020) ("parties cannot circumvent the purpose of summary judgment by creating sham issues of fact with affidavits that contradict their prior depositions."). Courts "may disregard new sworn testimony when it (1) contradicts that same witness's earlier sworn testimony and (2) fails to explain the contradiction or resolve any disparities." *James*, 959 F.3d at 317; *see also, Truly v. Sheahan*, 135 Fed. Appx 869 (7th Cir. 2005) (applying the sham affidavit rule to an inmate who changed his stance on exhaustion in response to summary judgment).

[4] There are three exceptions to the sham affidavit rule.  *James v. Hale*, 959 F.3d at 317.  An affidavit that contradicts prior testimony but is supported by newly discovered evidence may be allowable, an affidavit that contradicts a prior sworn statement but shows the prior statement was clearly a mistake may be allowable, and an affidavit that clarifies an ambiguous or confusing sworn statement may be allowed.  *Id.*  Plaintiff's situation does not fit any of these three scenarios because his new evidence (the counseling log) does not support the testimony, he has not shown the statement in his complaint was mistaken, and his new statements do not clarify something that was previously ambiguous.  The original complaint stated clearly and unequivocally that Defendant Bent told Plaintiff he would hinder grievances on April 23, 2024, and the new sworn statements claim Bent hindered grievances from April 3-8, 2024.

with counselors Dinkins or Teas to ask about the status of the missing grievances.[5] He faults the prison for not keeping him apprised of the status of pending grievances, but his own evidence suggests he knew the status of grievance K4-0424-1734, and he has no concrete evidence of unanswered queries about other "missing" grievances. Because Plaintiff's factual account of what happened with Defendant Bent and grievances between April 3 and 8, 2024, has changed over time and is not supported by any new evidence, the Court finds that this sworn statement in his summary judgment response violates the prohibition on sham affidavits.

In this case, the sham affidavit conclusion has a significant impact. If the Court were to find the affidavit was *not* a sham, this case would present factual disputes about the availability of the grievance process, and it could possibly even present a scenario where the Supreme Court's recent *Perttu v. Richards*[6] holding might be invoked. Because the Court finds that the affidavit is a sham, the Court concludes that there are not genuine disputes of material fact concerning the availability of the grievance process and *Perttu* intertwinement concerns do not exist. It is significant to note that, even though this case

---

[5] Evidence about how many grievances were submitted or what they contained is the sort that might have created a genuine dispute of fact about the availability of the grievance process if the Court had not reached the conclusion that Plaintiff's summary judgment response on missing grievances was a sham. *See e.g., Jackson*, 105 F.4th at 957-58 (finding that an inmate created a genuine dispute over availability by consistently attesting that he filed grievances that went missing before filing five that were successfully processed. The inmate submitted a declaration, supported by requests he had filed to staff seeking an update on the grievances, and he also described the contents of the allegedly missing grievances in detail).

[6] The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes. Here, the Court finds that there is not a genuine dispute of fact about whether Plaintiff submitted additional grievances from April 3-8 that Defendant Bent trashed. Because the Court does not find a genuine dispute about this, there is not an intertwinement issue as there was in *Perttu*.

is being dismissed for failure to exhaust administrative remedies, Plaintiff's opportunity to further pursue his claims is not over. The claims against Bent and Hart were filed prematurely, and this dismissal is without prejudice, so Plaintiff has the option to revive those claims by filing a new lawsuit now that he has exhausted grievance K4-0424-1734.

Plaintiff's Motion for an Extension of Time (Doc. 80) to Respond to the Defendants' summary judgment motion is granted instanter and his response was considered fully above. Plaintiff's Motion for Leave to Amend (Doc. 82) is denied as moot, because he explains in his subsequent Motion (Doc. 87) that he did not submit the document intending it to be construed as a second amended complaint, and instead meant for it to be appended to his summary judgment response as an exhibit. Thus, the Motion (Doc. 87) that clarifies his intentions is granted.

## DISPOSITION

Defendants' Motion for Summary Judgment (Doc. 76) is **GRANTED** in full and all claims in this case are dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies. The Clerk of Court shall enter judgment and **CLOSE** this case.

Plaintiff's Motion for an Extension (Doc. 80) and Motion for Notice (Doc. 87) are **GRANTED**, and his Motion to Amend (Doc. 82) is **DENIED** as **MOOT** for reasons explained above.

**IT IS SO ORDERED.**

Dated: February 27, 2026

/s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge